[No. A043051. First Dist., Div. Three. Oct. 25, 1988.]

ST. FRANCIS MEMORIAL HOSPITAL et al., Petitioners, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent; `
JOANNE DEATHERAGE, Real Party in Interest.

## COUNSEL

James C. Martin, John E. Dittoe, Kathy M. Banke and Crosby, Heafey, Roach & May for Petitioners.

No appearance for Respondent.

Robert U. Bokelman, William L. Jacobson and Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris for Real Party in Interest.

## OPINION

**MERRILL, J.**—St. Francis Memorial Hospital (St. Francis) seeks the protection of Evidence Code section 1157 for minutes, correspondence and other documents of its medical staff committees and subcommittees. Section 1157 protects the proceedings of hospital medical staff committees, but the trial court has applied an exception which requires disclosure to "any person requesting hospital staff privileges." We conclude that the exception was misapplied. Dr. Deatherage, plaintiff in the proceedings below, is not requesting hospital staff privileges; she is complaining that her existing practice of electroconvulsive treatment (ECT hereinafter) was temporarily interrupted while the hospital established new guidelines for such treatment. We issue a writ of mandate.

In April of 1983, for reasons that are not explained to us, the Psychiatric Care and Evaluation Committee of St. Francis met to discuss the operation of the hospital's ECT unit. In that meeting, the committee decided to hire an outside consultant to evaluate the ECT unit. In August of 1983, the consultant presented his report, which recommended various changes in the procedures for providing ECT at St. Francis. The hospital then suspended

all ECT for a period of some five and one-half months in order to implement its new guidelines. This lawsuit followed, seeking damages for interruption of plaintiff's medical practice.

Dr. Joanne Deatherage was accorded psychiatric staff privileges at St. Francis in 1969 and began providing ECT at least by 1977, but probably as early as 1972. Her staff privileges were at no time restricted or limited, but she and other ECT users were prevented from using that procedure at St. Francis by a moratorium that lasted from October 1, 1983, until March 19, 1984. In March of 1984, operation of the ECT unit resumed under new guidelines.

Dr. Deatherage demanded production by St. Francis of various documents, including minutes of the Psychiatric Quality Care Committee and the ECT Task Force Committee and various letters written regarding ECT. After hearing, the court ordered disclosure of most of the requested information, but limited somewhat the dates and subject matter. The court's order cited as authority *Roseville Community Hospital* v. *Superior Court* (1977) 70 Cal.App.3d 809 [139 Cal.Rptr. 170] and *Matchett* v. *Superior Court* (1974) 40 Cal.App.3d 623 [115 Cal.Rptr. 317]. This petition by St. Francis challenges that ruling.

Evidence Code section 1157 provides in part: "(a) Neither the proceedings nor the records of organized committees of medical . . . [or] psychological . . . staffs in hospitals having the responsibility of evaluation and improvement of the quality of care rendered in the hospital . . . shall be subject to discovery." But subdivision (c) provides that "[t]he prohibition relating to discovery or testimony does not apply to the statements made by any person in attendance at a meeting of any of those committees who is a party to an action or proceeding the subject matter of which was reviewed at that meeting, *or to any person requesting hospital staff privileges,* or in any action against an insurance carrier alleging bad faith by the carrier in refusing to accept a settlement offer within the policy limits." (Italics added.)

The trial court's citation to *Matchett* was probably to that court's dictum about Evidence Code section 1157: "The statute, then, is aimed directly at malpractice actions in which a present or former hospital staff doctor is a defendant. The statutory exception for 'any person requesting hospital staff privileges' cannot be construed as plaintiff contends. To all appearances the exception was designed to set the immunity to one side and to permit discovery in suits by doctors claiming wrongful or arbitrary exclusion from hospital staff privileges." (*Matchett* v. *Superior Court, supra,* 40 Cal.App.3d at pp. 629-630.)

■ We conclude, however, that Evidence Code section 1157, subdivision (c), neither on its face nor as interpreted by *Matchett,* applies to the situation in the instant case. Dr. Deatherage is not a "person requesting hospital staff privileges," nor is she claiming "wrongful or arbitrary exclusion from hospital staff privileges." Instead, she is challenging the hospital's right to suspend and study a form of medical treatment upon which her practice may depend. Such a broad decision about operation of the hospital is quite different from a decision to deny staff privileges to a specific applicant. Evidence Code section 1157 bars the discovery Dr. Deatherage seeks.

*Roseville Community Hospital* v. *Superior Court, supra,* 70 Cal.App.3d 809, also cited by the trial court, is distinguishable. In *Roseville,* the hospital terminated an agreement under which a partnership of pathologists worked as the exclusive clinical pathologists for the hospital. The *Roseville* court concluded that the pathologists' lawsuit was a suit " '. . . by doctors claiming wrongful or arbitrary exclusion from hospital staff privileges' " (*id.,* at p. 814) within the meaning of *Matchett.* Clearly, Dr. Deatherage's action is not such a suit.

Having so concluded, and having sought and received opposition to the petition, we issue a peremptory writ of mandate in the first instance. (Code Civ. Proc., § 1088; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

Let a peremptory writ of mandate issue directing the San Francisco County Superior Court to vacate its order permitting discovery of records of hospital committees and to enter a new order denying such discovery.

Barry-Deal, Acting P. J., and Strankman, J., concurred.